## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 10-10087-NMG |
| SHELTON JOHNSON, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## REPORT AND RECOMMENDATION ON MOTION TO MODIFY SUPERVISED RELEASE TO AUTHORIZE POSSESSION AND USE OF MEDICAL MARIJUANA

### July 8, 2022

Hennessy, M.J.

Defendant Shelton Johnson ("Johnson") moves to amend the conditions of his supervised release to authorize him to ingest marijuana pursuant to the recommendation of a medical doctor. [Dkt. No. 105]. The United States opposes the motion. [Dkt. No. 117]. The matter was referred to me for a report and recommendation. [Dkt. No. 113]. I recommend that the motion be DENIED.

## I.    Background

Johnson was charged in a two-count indictment with attempting to rob one bank and then robbing another on December 30, 2009. [See Dkt. Nos. 1, 1-1]. On June 15, 2011, Johnson pleaded guilty to the indictment. [Presentence Report ("PSR") ¶ 3]. In relevant part, the PSR reported the following:

> The defendant stated that he is ready to stay clean and sober. He noted that he recognizes the damage his substance abuse had caused in his life and he has not been able to maintain a normal lifestyle or healthy relationships, because his drug use has been out of control. The defendant advised that because of his addiction, he believes that he lacks the skills to function in society. He stated that despite his age, he does not know how to do a lot of things that are common sense such as how to obtain a driver's license, open a bank account, or use credit. The defendant noted that upon his release from incarceration, he will definitely need transitional services

and wants to be placed in a residential program that can assist him in staying sober and "get my life in the right direction." The defendant advised that he is interested in, and would likely benefit from, substance abuse treatment.

United States v. Johnson, PSR ¶ 130 (quotations in original). The Court sentenced Johnson to 151 months' incarceration, during which it was recommended he participate in the 500-hour Residential Drug Abuse Program, to be followed by 36 months' supervised release. [Dkt. No. 50 at 2–5]. The mandatory supervised release conditions prohibit Johnson from committing a crime or possessing or using a controlled substance. [Id. at 4]. The Court also ordered Johnson to participate in substance abuse and mental health treatment, as directed by the Probation Department. [Id. at 5].

Johnson began serving supervised release on or about April 23, 2021. [See Dkt. No. 87 at 1]. On April 22, 2022, Johnson moved to modify the conditions of his release to permit his use of medical marijuana. [Dkt. No. 105]. In support of the motion, Johnson submitted a letter dated April 15, 2022, from Dr. Jill Becker on the letterhead of "inhaleMD." [Dkt. No. 105-1]. Dr. Becker wrote:

> Mr. Shelton Johnson . . . has been certified with [t]he State of Massachusetts Cannabis Control Commission for the use of medical marijuana and is under our medical care at inhaleMD. Mr. Johnson suffers from anxiety, depression, post traumatic stress disorder (PTSD) and panic attacks. Medical cannabis has been shown to be beneficial for each of these conditions, in general, and for Mr. Johnson, in particular.

Id. Johnson filed additional briefing on May 13, 2022, and supplemental exhibits on June 3, 2022. [Dkt. Nos. 115 and 118]. The Government opposed the motion to amend. [Dkt. No. 117].

II.   **Analysis**

Johnson makes three arguments in support of his motion to authorize his use of marijuana while on supervised release: (1) that his medical marijuana use does not offend federal law, in particular the Controlled Substances Act ("CSA"); (2) that denial of prescribed medical marijuana

possession infringes his substantive due process rights; and (3) that a revocation hearing premised on prescribed medical marijuana use is foreclosed by Congressional Action.  [Dkt. No. 115 at 1].[1] The United States opposes the motion to amend because the possession and use of marijuana is a federal crime.  [Dkt. No. 117 at 3–4].

### 1.      Federal Law Prohibits Possession and Use of Marijuana

Marijuana is a Schedule I controlled substance.  21 U.S.C. § 812, Schedule I (c)(10). Possession of marijuana, therefore, is a federal crime, 21 U.S.C. § 844(a), and, as a Schedule I drug, marijuana "has no currently acceptable medical use in treatment in the United States" under federal law.  21 U.S.C. § 812(b)(1) (defining the characteristics of a Schedule I controlled substance); see also Gonzalez v. Raich, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug . . . the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of an [FDA] preapproved research study." (citations omitted)).  Hence, marijuana cannot be dispensed under a prescription from a licensed medical practitioner.  See 21 U.S.C. § 829 (authorizing prescriptions of controlled substances listed on schedules other than Schedule I); United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 492 n.5 (2001) ("Unlike drugs in other schedules, see § 829, schedule I drugs cannot be dispensed under a prescription.").  The Supreme Court has held that changes in state law that de-criminalize marijuana and/or permit its medical and recreational use do not impact the federal prohibition on possession of marijuana.  See Gonzalez, 545 U.S. at 27 ("[T]he fact that marijuana is used 'for personal medical purposes on the advice of a physician' cannot serve as a

---

[1] At the June 9, 2022 hearing on the motion, Johnson also asserted that his arguments implicate what sanction, if any, is appropriate should the Government prove his marijuana use under supervision of a doctor be found to constitute a violation of his supervised release.

distinguishing factor.  The CSA designates marijuana as contraband for <u>any</u> purpose[.]" (emphasis in original) (citation omitted)).

Johnson nevertheless argues that his marijuana possession does not offend federal law. [Dkt. No. 115 at 2].  To support this position, Johnson recites the plain text of the CSA, which prohibits possession of a controlled substance "unless such substance was obtained . . . pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice."  [<u>Id.</u> (quoting 21 U.S.C. § 844(a))].  Johnson contends that because his possession "was undertaken pursuant to a valid prescription or order from a qualifying practitioner," it "cannot be construed as the commission of a crime."  [<u>Id.</u> (quotations omitted)].  This argument fails.  The letter from Dr. Becker only memorializes the fact that the Commonwealth's Cannabis Control Commission issued Johnson a certificate for medical marijuana use.  [<u>See</u> Dkt. No. 105-1].  A certificate authorizes a person to purchase marijuana from a dispensary.  <u>See</u> Mass. Gen. Laws ch. 94I § 2(a) ("Upon issuance of a written certification from a healthcare professional, the commission shall issue a registration card to the qualifying patient.  A medical marijuana treatment center may sell medical use marijuana to a card holder.").  Hence, neither the letter nor the certificate is a "valid prescription or order."  Nor could they be—a doctor cannot prescribe a Schedule I controlled substance.

Laws governing supervised release under Title 18 also impact the instant motion. 18 U.S.C. § 3583(a) permits but does not require a court to place a defendant on supervised release as part of a sentence of imprisonment, with few exceptions that do not apply here.  However, if the court includes a term of supervised release, it must also impose certain mandatory conditions:

> The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision . . . and that the defendant not possess a controlled substance.

18 U.S.C. § 3583(d).  Here, Johnson's proposed amendment, permitting him to possess and use marijuana during supervised release would eviscerate both of these mandatory conditions.

Accordingly, I reject Johnson's claim that marijuana use does not offend federal law.

### 2.      Johnson Failed to Show a Substantive Due Process Right to Use Medical Marijuana

Johnson's second argument is that he has a fundamental liberty interest in prescribed medical marijuana use, as authorized by state law.  [Dkt. No. 115 at 3].  Johnson notes that many states have accepted medical marijuana use and concludes that he "should not be placed in jeopardy for using marijuana for medical purposes under the supervision of a physician when marijuana is being sold and consumed openly throughout the Commonwealth."  [Id. at 3–4].

The Fifth Amendment's Due Process Clause "unquestionably provides substantive protections for certain unenumerated fundamental rights."  Raich v. Gonzales, 500 F.3d 850, 862 (9th Cir. 2007).  However, the Supreme Court "has long been 'reluctant' to recognize rights that are not mentioned in the Constitution."  Dobbs v. Jackson Women's Health Org., No. 19-1392, slip op. at 14 (U.S. June 24, 2022) (citing Collins v. Harker Heights, 503 U.S. 115, 125 (1992)) (overruling Roe v. Wade, 410 U.S. 113 (1973)).  This preserves the "authority that the Constitution entrusts to the people's elected representatives."  Id. (citation omitted); Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (courts must "exercise the utmost care" in finding fundamental rights because "extending constitutional protection to an asserted right or liberty interest . . . place[s] the matter outside the arena of public debate and legislative action.").  The Supreme Court established a two-part inquiry for the substantive due process analysis in Washington v. Glucksberg:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed."  Second,

we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest.

521 U.S. 702, 720–21 (1997) (citations omitted); see also Dobbs, No. 19-1392, slip op. at 13 (placing special emphasis on the requirement that fundamental rights be "objectively, deeply rooted in this Nation's history and tradition." (quoting Glucksberg, 521 U.S. at 720–21)).

Applying the foregoing, Johnson arguably satisfies his obligation to carefully describe the asserted right: "a fundamental liberty interest in using marijuana for medical purposes under the supervision of a physician, a right which he is explicitly afforded as a matter of state law." [Dkt. No. 115 at 3]. Raich involved an identical constitutional challenge to the prohibition in the CSA against medical marijuana, based on California law.  See 500 F.3d at 864.  Plaintiff Raich suffered from an inoperable brain tumor and other conditions.  Id. at 855.  Her doctor testified that virtually every available treatment, including some 35 medications, was either ineffective or caused intolerable side effects, except marijuana, dispensed in accordance with California's Compassionate Use Act, which provided great relief.  Id.  Raich moved to enjoin enforcement of the CSA as unconstitutionally infringing her due process rights.  Id. at 356.  The Ninth Circuit framed the fundamental right as "whether the liberty interest specially protected by the Due Process Clause embraces a right to make life-shaping decisions on a physician's advice to use medical marijuana to preserve the integrity of her body, avoid intolerable pain, and preserve her life." Id. at 864.  I find the differences between the right as described by Johnson and as framed by the Ninth Circuit in Raich to be ones of degree, not kind.  Both involve the fundamental interest to use marijuana to address health conditions on the recommendation of a physician.

However, Johnson fails to satisfy the other part of the inquiry: showing that the right to use medical marijuana on a physician's advice is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist

if they were sacrificed." Johnson offers nothing to suggest that medical marijuana use is deeply rooted in our history and tradition. To the contrary, federal law has treated all marijuana possession and use as a crime for over 50 years, since the 1970 passage of the CSA. See Raich, 500 F.3d at 865. Indeed, Johnson concedes that no court has yet recognized such a right. [Dkt. No. 115 at 3; see also Dkt. No. 105 at 3]. Johnson cites decisions from five judges in the District of Massachusetts, who "concluded that usage of medical marijuana in accordance with state law does not violate federal conditions of release." [Dkt. No. 105 at 3 n.2].[2] However, Johnson also acknowledges that Magistrate Judge Boal has repeatedly denied motions to amend conditions of pretrial release to permit possession and use of medical marijuana. [Id.].[3] While I acknowledge the decisions granting medical marijuana use on supervised release,[4] all of them are summary orders unaccompanied by analysis of the CSA's prohibition, Section 3583 or fundamental rights under the Due Process Clause.[5] Additionally, five cases from this District granting marijuana use

---

[2] Citing United States v. Sophia Velasquez, 19-cr-10459-RWZ-55, Dkt No. 1946 (D. Mass. June 8, 2021) (judgment directing defendant to secure a prescription for marijuana); United States v. Raymond Gaines, 17-cr-10177-ADB, Dkt. No. 62 (D. Mass. Nov. 20, 2019) (probation memorandum recounting that "the Court has indicated its approval of Mr. Gaines' use of marijuana at the time of his sentencing."); United States v. Joshua Pelosi, 14-cr-30028-MGM, Dkt. No. 94 (D. Mass. Mar. 30, 2018) ("As to the use of medical marijuana, the conditions of supervised release will be modified to allow its use when medically authorized under state law and in compliance with all state regulations and procedures for the medical dispensing and use of the substance."); United States v. Gerard Proulx, 15-cr-10133-GAO, Dkt. No. 38 (D. Mass. Jan. 17, 2018) (amending supervised release to, among other things, allow use of marijuana "that is authorized for medical purposes by a qualifying certificate under state law."); United States v. Jeffrey Shields, 07-cv-12056-PBS, Dkt. No. 333 (D. Mass. June 13, 2016) (granting unopposed motion to modify supervised release to permit defendant to possess and use medical marijuana for a qualifying debilitating condition, as defined by Maine law).
[3] Citing United States v. Jaafar, 21-cr-10248-NMG, Dkt. No. 50 (D. Mass. Dec. 3, 2021); United States v. Spinola, 19-cr-10279-IT, Dkt. No. 108 (D. Mass. Sept. 18, 2020); United States v. Pagan, 18-cr-10386-FDS, Dkt. No. 58 (D. Mass. Mar. 18, 2019).
[4] I take issue with the citation to United States v. Sophia Velasquez insofar as the condition in that case provides: "You shall secure a marijuana prescription and will be allowed to use marijuana as prescribed by a physician. Any further or unauthorized use of marijuana is prohibited." 19-cr-10459-RWZ-55, Dkt. No. 1946. As demonstrated above, this condition sets an impossible standard since a marijuana prescription cannot be secured. As to United States v. Raymond Gaines, that order addresses a different concern—Gaines could not afford to purchase marijuana from a dispensary and blamed positive drug tests for cocaine and amphetamines on tainted marijuana he bought from street dealers, which created supervision issues for the Probation Department. 17-cr-10177-ADB, Dkt. No. 62.
[5] A possible exception to this is Judge Mastroianni's decision in United States v. Joshua Pelosi, where he granted in part and denied in part a motion to modify terms of supervised release, and "refer[red] to the record of the hearing for full discussion." 14-cr-30028-MGM, Dkt. No. 94 (D. Mass. Mar. 30, 2018). Notwithstanding the efforts of my Session, we have been unable to locate a recording or transcript of Judge Mastroianni's hearing.

on supervised release are simply insufficient to show a fundamental right "deeply rooted in our Nation's history and tradition."  Cf. Dobbs, No. 19-1392, slip op. at 15–25 (reviewing centuries of common law classifying abortion as a crime); Glucksberg, 521 U.S. at 711 (evaluating "over 700 years" of "tradition" and history).  Furthermore, I respectfully do not see how these cases can be squared with the laws discussed above, which Congress has enacted, and with the fundamental concept of separation of powers, particularly the constitutional provision that delegates the power to legislate to Congress.  See U.S. Const., Art. I § 1.  Put another way, I view Johnson's motion to amend as asking the Court to rewrite laws Congress passed and allow Johnson to commit a crime while on release, based on the opinion of a doctor.  I believe the Court lacks the power to do so.

Regarding medical marijuana use as a right "implicit in the concept of ordered liberty," Johnson argues that the tension between federal law and the law of the Commonwealth invites "disorder" and confusion.  I agree.  For example, I uniformly advise defendants released pretrial that despite Massachusetts law, it is a crime to use or possess marijuana under federal law, and hence a violation of conditions of pretrial release to do so.  However, it seems clear that disorder, even contradiction, between state and federal law does not automatically lend itself to creation of an unenumerated fundamental right.  Rather, the Supremacy Clause implicitly recognizes that such conflicts will inevitably arise, and "unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."  Gonzalez, 545 U.S. at 29.

Lastly, Johnson contends that even though in Raich the Ninth Circuit expressly rejected an identical argument for expanding the Due Process Clause to include a right to use marijuana on physician's advice, it simultaneously recognized that the "day when the right to use medical marijuana to alleviate excruciating pain may be deemed fundamental . . . may be upon us sooner than expected.".  Raich, 500 F.3d at 866.  Johnson underscores that since Raich, marijuana has

been legalized in 15 states and its medical use authorized in 39.  [Dkt. No. 115 at 3 (citations omitted)].  But just last year, the Ninth Circuit rejected this argument in United States v. Langley, which sought reconsideration of Raich precisely "in light of the increasing number of states that no longer criminalize the use of marijuana for medical purposes."  17 F.4th 1273, 1273 (9th Cir. 2021) (per curiam).  Finding that it was bound by Raich and federal law, the Circuit Court rejected Langley's challenge.  Id. at 1273, 1274 ("the applicable federal statutes precluded the court from granting Langley's motion" to amend conditions of release to use medical marijuana).

For these reasons, I find that Johnson has failed to establish that the Due Process Clause embraces a fundamental right to medical marijuana use.

### 3.    Revocation Hearing is not Foreclosed

Johnson's last argument is that a revocation hearing premised on medical marijuana use is foreclosed by Congressional Action.  This argument is based on a rider to appropriations bills funding the Government (the "Rider") since 2014.  The Rider provides that "none of the funds made available under this Act to the Department of Justice ('DOJ') may be used with respect to [Massachusetts and 49 other states and jurisdictions], to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."[6]  Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, § 531, 136 Stat. 49 (2022).  Johnson cites United States v. Jackson, which held that "the appropriations [R]ider prohibits DOJ from using its funds to prosecute a violation of supervised release based on state law-compliant use of marijuana."  388 F. Supp. 3d 505, 513 (E.D. Pa. 2019).

---

[6] President Biden's proposed 2021 budget included the Rider, and it was part of Continuing Resolutions to fund the Government on September 30 and December 3, 2021, and February 18 and March 11, 2022.  The Rider was also included in the omnibus spending bill funding the Federal Government from March 15 through September 30, 2022.  See Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, § 531, 136 Stat. 49 (2022).

Jackson is not binding on this Court, and I respectfully disagree with its reasoning.  As Jackson acknowledges, the intended breadth of the Rider's prohibition is unclear, and I do not read it as broadly as Jackson.  See id. at 513–14 ("the Court acknowledges that 'some members of Congress may have desired a more expansive construction of the [R]ider, while others may have preferred a more limited interpretation.'" (quoting United States v. McIntosh, 833 F.3d 1163, 1178–79 (9th Cir. 2016)).  The Jackson court took the position that interference with even one Pennsylvania citizen's state law-compliant medical marijuana use was sufficient to violate the Rider's prohibition.  Id. at 512 ("It has never been a legal principle tha[t] an impermissible government intrusion can be countenanced because any one defendant is a small piece of the legal landscape." (alteration in original) (citation omitted)).  However, if this position were correct, DOJ would be required to defer its prosecutorial judgment to that of a medical professional who recommends marijuana, and to ignore the law discussed above—including that a defendant on supervised release be prohibited from committing a crime or possessing a controlled substance.  It is a canon of statutory interpretation that, whenever possible, a law be read as not invalidating or conflicting with existing law.  See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1630 (2018) ("the canon against reading conflicts into statutes is a traditional tool of statutory construction").  Respectfully, I believe Jackson departs from this canon in reading the Rider as broadly as it does.

Furthermore, in my view, DOJ's participation in prosecuting Jackson for using marijuana while on supervised release did not prevent Pennsylvania from implementing its own laws regulating possession, use, and distribution of marijuana.  To the contrary, the laws were on the books when Jackson's supervised release violation allegedly took place, and at that time many Pennsylvania citizens undoubtedly qualified under its provisions to possess, use, and distribute marijuana.  Jackson does not suggest that DOJ prosecuted any of these individuals under the CSA.

Rather, DOJ was simply poised to prosecute a violation of a condition of release.  It would be no different had Jackson been prohibited from some other conduct that is legal, for instance, consuming alcohol.  Such a condition would not prevent the implementation of Pennsylvania's regulation of alcohol consumption and sales through its legislature, but a federal court could entertain a petition alleging a violation of supervised release for prohibited alcohol use.  The prosecution of such a petition would not upset the implementation of laws regulating alcohol.  The current circumstances in Massachusetts persuade me that prosecution of Johnson for using marijuana on supervised release does not prevent implementation of Massachusetts' regulation of marijuana.  As Johnson noted, "marijuana is being sold and consumed openly throughout the Commonwealth."  [Dkt. No. 115 at 3–4].

Lastly, I realize that Jackson could be distinguished on the simple principle that here Johnson seeks only to amend the conditions of his supervised release, and this Report and Recommendation does not deal with a supervised release violation.  See Jackson, 388 F. Supp. 3d at 513 (distinguishing cases "refusing to modify the conditions of a defendant's probation to allow him to possess and use medical marijuana[.]").  However, this would proverbially kick the can down the road.  Should Johnson's proposed modification be denied (as recommended), Johnson may be prosecuted for violating his conditions of supervised release and the issue will be ripe.

For all these reasons, I reject Johnson's reliance on the Rider to support his motion to amend the conditions of his supervised release.

III.   **Conclusion**

For the foregoing reasons, I recommend that Johnson's motion to amend the conditions of his supervised release be DENIED.

_/s/ David H. Hennessy_____
David H. Hennessy
United States Magistrate Judge